## Richmond.

### REYNOLDS v. COOK.

NOVEMBER 10th, 1887.

|  |  |
|---|---|
| 83 | 817 |
| 92 | 717 |
| 83 | 817 |
| 96 | 481 |
| 83 | 817 |
| 102 | 566 |
| 83 | 817 |
| 107 | 244 |

1. REAL ESTATE—*Conveyance without warranty—After-acquired title—General rule.*—The general rule is that where land is conveyed without warranty, the grantor is not estopped from setting up an after-acquired title. *Doswell* v. *Buchanan*, 3 Leigh, 365.

2. IDEM—*Recitals—Estoppel—Exception.*—But where conveyance recites or affirms, expressly or impliedly, that grantor is seized of a particular estate which it purports to convey, he will be estopped to deny that such estate passed, although there be no warranty at all. *Van Rensselaer* v. *Kearney*, 11 Howard, 297.

3. TITLE—*Evidence.*—Instruments that are muniments of title are, as such, competent evidence.

4. EJECTMENT—*Special plea—Disclaimer.*—In ejectment, the only plea in bar of action, in whole or in part, is the plea of "not guilty." A paper called a "disclaimer," but actually in the nature of a special plea, should be rejected. Code 1873, ch. 131, § 13.

5. IDEM—*Declaration—Verdict.*—Declaration charged that defendant unlawfully withheld possession of whole limestone tract. The evidence showed that defendant claimed no other right than to quarry and remove limestone from the land. Verdict: "We, the jury, find the defendant not guilty."

HELD:

The verdict is contrary to the evidence. It should have been for the plaintiff, except as to the right to quarry and remove limestone. Code 1873, ch. 131, § 18.

6. INCORPOREAL HEREDITAMENT—*Ejectment.*—A right to quarry and remove limestone from a tract of land is an interest in, or a right arising out of, land, and as such constitutes, under Code 1873, ch. 131, § 5, a foundation for an action of ejectment.

Argued at Staunton.    Decided at Richmond.

LXXXIII—103

Error to judgment of circuit court of Botetourt county, rendered at its May term, 1887, in an action of ejectment wherein Corbin M. Reynolds was plaintiff and D. S. Cook was defendant.

On the twenty-third of February, 1880, the plaintiff in error, Corbin M. Reynolds, who was the plaintiff in the court below, sold and conveyed, with a covenant of general warranty, to the defendant, Cook, a certain tract of land lying on James river, in the said county, called Mt. Airy. On the same day the parties entered into a supplemental contract under seal, wherein it was recited that it not having been convenient to incorporate into the deed to Mt. Airy certain "exceptions and provisions," it was therefore stipulated, "as a part of the original contract for the sale of the land," that the said Reynolds was to have the right to the then growing crop of wheat on the land, and the privilege of harvesting and removing it at the proper time. And then it was further stipulated as follows : "The said Reynolds also grants unto the said Cook the right to quarry and remove all the limestone (free of charge for royalty) that may be required for furnace and agricultural purposes, in connection with the aforesaid Mt. Airy tract of land, from the said Reynolds' land on the opposite side of the river." The consideration for the sale as expressed in the deed was the sum of $26,000.

At the time of these transactions Reynolds had no title to the land described as lying " on the opposite side of the river," which was a tract containing about twenty acres, though he represented to Cook that he owned it. He, however, several years thereafter (in September, 1885,) obtained a patent for the same from the Commonwealth, whereby the legal title to the land became vested in him.

After he had thus acquired title to the land, the present action was instituted, he claiming that the grant of the right to take limestone from the land not having been

made with a covenant of warranty, the subsequently acquired title did not enure to the benefit of his grantee.

The defendant pleaded the general issue, not guilty, and also filed what in the record is termed a "disclaimer," which is as follows: "And the said defendant further says that he does not claim title to the said tract of land sued for in this action; nor does the said defendant claim the possession, or the right to the possession, of the said land, except the right to enter upon the said land and to quarry and remove, free of charge for royalty, all the limestone that may be required by the said defendant for furnace and agricultural purposes (in connection with the aforesaid Mt. Airy tract of land) from the said plaintiff's lands on the opposite side of the river from the aforesaid Mt. Airy tract, and which are the same lands sued for in this action, as was granted and allowed unto the said defendant by the said plaintiff by and under their certain written agreement under date of February 23, 1880, and this the said defendant is ready to verify."

To the filing of this paper the plaintiff objected, but the court overruled the objection and allowed the paper to be filed; to which ruling of the court the plaintiff excepted. The plaintiff also objected, at the trial, to the introduction in evidence of the deed and the supplemental agreement above mentioned, but the objection was overruled, and he again excepted. It was proved that after the execution of the agreement the defendant had exercised acts of ownership over the land to the extent of quarrying and removing limestone therefrom at his will, and that his claim did not extend beyond the right to enter upon the same for that purpose. There was a verdict for the defendant in these words: "We, the jury, find the defendant not guilty." The plaintiff, thereupon, moved for a new trial, on the ground that the verdict was contrary to the law and the evidence; but the court overruled the motion and entered

up judgment on the verdict, and the plaintiff excepted. To this judgment a writ of error was awarded by one of the judges of this court.

*G. W. & L. C. Hansbrough* and *H. W. Sheffey*, for the plaintiff in error.

*Haden & Haden* and *Glasgow & Glasgow*, for the defendant in error.

LEWIS, P., (after stating the case) delivered the opinion of the court.

By the supplemental agreement under seal, of the twenty-third of February, 1880, the right to quarry and remove limestone for certain specific purposes was granted by Reynolds to Cook, which passed to the latter an incorporeal hereditament, provided Reynolds was seised of the land in respect of which the right was granted when the agreement was executed. It was clearly an incorporeal hereditament—first, because it was not a mere license, as was the case in *Barksdale* v. *Hairston*, 81 Va. 764, and in other similar cases there cited; and, secondly, because it was not the grant of an exclusive right. *Johnstown Iron Co.* v. *Cambria Iron Co.*, 32 Pa. St. 241; *Clement* v. *Youngman*, 40 Id. 341; *Marble Co.* v. *Ripley*, 10 Wall. 339; 63 Am. Dec. 101, and cases cited. Such a right has been compared to a grant of common *sans nombre*, and is, therefore, an interest in, or a right arising out of, land, and as such constitutes, under our statute, a foundation for an action of ejectment. Code 1873, ch. 131, § 5; 3 Kent's Comm. 419; Tyler on Ejectment, 42.

This is not disputed. The real controversy relates to the effect of the grant in another particular. It appears from the record that when the grant was made Reynolds had

no title to the land, and the first and principal question is, whether he is estopped from setting up as against the defendant the title subsequently acquired. He contends that he is not, on the ground that the grant was made without a clause of warranty, and where there is no warranty, he says, there is no estoppel.

On the other hand, the defendant contends—first, that the deed to Mt. Airy and the supplemental agreement are virtually one instrument, and, therefore, that the covenant of warranty in the deed embraces the mineral right also; and, secondly, that the plaintiff is estopped independently of the warranty.

As, in our view, the case may be disposed of on the latter ground, that alone will be considered.

The general rule undoubtedly is, that where land is conveyed without warranty, the grantor is not estopped from setting up an after-acquired title. On the other hand, a covenant of warranty works an estoppel, and the reason usually given is that the estoppel prevents circuity of action. *Doswell* v. *Buchanan's Ex'ors*, 3 Leigh, 365; *Gregory* v. *Peoples*, 80 Va. 355. But this is not the only ground upon which an estoppel arises. The rule is well established that where the deed recites or affirms, expressly or impliedly, that the grantor is seised of a particular estate which the deed purports to convey, and upon the faith of which the bargain was made, he will be thereafter estopped to deny that such an estate was passed to his vendee, although the deed contains no covenant of warranty at all. And the rule accords with common honesty and fair dealing.

The leading case on the subject in this country is *Van Rensselaer* v. *Kearney*, 11 How. 297, which was ably argued and very fully considered. In that case a deed was executed by a life tenant conveying his interest in certain lands, which was supposed by the parties at the time to be a

fee-simple, and upon that footing the bargain proceeded. Afterwards the grantor acquired the fee, and it was held that he and those claiming under him were estopped by his deed from setting up such after-acquired interest, independently of the covenants in the deed, which were of doubtful import.

In delivering the opinion of the court, Mr. Justice Nelson said : " Where the deed bears on its face evidence that the grantor intended to convey, and the grantee expected to become invested with, an estate of a particular description or quality, and that the bargain had proceeded upon that footing between the parties, then, although it may not contain any covenants of title, in the technical sense of the term, still the legal operation and effect of the instrument will be as binding upon the grantor and those claiming under him, in respect to the estate thus described, as if a formal covenant to that effect had been inserted, at least so far as to estop them from ever afterwards denying that he was seised of the particular estate at the time of the conveyance."

He then refers to and reviews a number of authorities, English and American, on the subject, and continues as follows : " The principle deducible from these authorities seems to be, that whatever may be the form or nature of the conveyance used to pass real property, if the grantor sets forth on the face of the instrument, by way of recital or averment, that he is seised or possessed of a particular estate in the premises, and which estate the deed purports to convey ; or, what is the same thing, if the seisin or possession of a particular estate is affirmed in the deed, either in express terms or by necessary implication, the grantor and all persons in privity with him shall be estopped from ever afterwards denying that he was so seised and possessed at the time he made the conveyance. The estoppel works upon the estate and binds an after-acquired title as between

parties and privies." And the reason, he adds, is that such affirmation must necessarily have influenced the grantee in making the purchase, and, hence, the grantor and those in privity with him, in good faith and fair dealing, should be forever thereafter precluded from gainsaying it.

" The doctrine," he also added, " is founded upon the highest principles of morality, and recommends itself to the common sense and justice of every one. And although it debars the truth in the particular case, and therefore is not unfrequently characterized as odious, and not to be favored, still it should be remembered that it debars it only in the case where its utterance would convict the party of a previous falsehood * * and imposes silence only when in conscience and honesty he should not be allowed to speak."

The doctrine of this case was reaffirmed in *Lessee of French* v. *Spencer*, 21 How. 228—a case very similar to the case at bar. There, one Fosgit conveyed, by deed purporting to convey the fee, a certain tract of land without warranty, to which at the time he had not the legal title. Afterwards a patent for the land issued in his name from the Federal government, whereby he acquired the legal title; and after his death, in an action of ejectment to recover the land by one of his heirs against the heirs of his grantee, to whom in the meantime the land had descended, it was held that the plaintiff, claiming under the grantor, was estopped by the deed from disturbing the title or possession of the defendants. " The estoppel," said the court, " works upon *the estate* and binds an after-acquired title as between parties and privies." See also *Carver* v. *Jackson*, 4 Pet. 1, 85; *Batchelder* v. *Lovely*, 69 Me. 33; *Magruder* v. *Esway*, 35 Ohio St. 221; *Root* v. *Crook*, 7 Barr, 378; *Clark* v. *Baker*, 14 Cal. 612; *Nixon* v. *Carco*, 12 Miss. 414; *Bush* v. *Person*, 18 How. 82; Bigelow on Estoppel (3d ed.), 332; 2 Smith's Lead. Cas. (7th Am.

ed.) p. 673, notes to Duchess of Kingston's case; 7 Rob. Pr. 419, *et seq.* See also what is said by the court in *Wynn* v. *Hannan's devisees,* 5 Gratt. 164.

These principles apply to the present case and are decisive of it. The supplemental agreement of the twenty-third of February, 1880, shows that the right to quarry limestone on the land was embraced in the original contract for the sale of Mt. Airy farm on the opposite side of the river. The consideration expressed in the deed to Mt. Airy is $26,000, so that the grant of the mineral right was for a valuable consideration. When the sale was made the plaintiff represented to the defendant that he owned the land, and the fair inference from the record is that the latter, in consequence of the representations of the former, believed the title was good and bargained accordingly.

The comprehensive language of the grant, taken in connection with the deed to which it refers, supports this view. The deed conveys the Mt. Airy farm "to the said Cook, his heirs and assigns forever," and the right granted was to quarry limestone for furnace and agricultural purposes "in connection with" that farm. This shows, in the absence of anything to the contrary, that the defendant expected to become invested with an estate in fee. The language of the grant is appropriate to pass an estate in fee, and, by implication at least, affirms that the plaintiff was seised of such an estate. Whether, in addition to this, the defendant, on the faith of the grant, has expended money in the erection of a furnace or otherwise, does not appear. But enough does appear to show very clearly that the attempt of the plaintiff to set up the after-acquired title is not consistent with good faith and fair dealing. And we are of opinion that he is estopped by the grant, construed in connection with the deed, from doing so. *Cadwell* v. *Fulton,* 31 Pa. St. 475, 489.

We are also of opinion that the objection to the action

·of the circuit court in permitting the deed and the supplemental agreement to be given in evidence to the jury is not well taken. These instruments are muniments of the defendant's title, and as such are competent evidence. *Lessee of French* v. *Spencer*, 21 How. *supra*.

There was error, however, in overruling the plaintiff's objection to the filing of the paper called a disclaimer. Technically, it is not a disclaimer, but is in the nature of a special plea in bar, and ought, therefore, to have been rejected; for in an action of ejectment, the only plea in bar of the action, in whole or in part, admissible under the statute is the plea of not guilty. The defendant, it has been held, may plead in abatement, and may also plead the general issue; but matters in bar of the action can be set up only under a plea of the latter kind. Code 1873, ch. 131, § 13; *Jas. Riv. &.Kan. Co.* v. *Robinson*, 16 Gratt. 434. It is not easy, however, to see wherein the plaintiff has been injured by the ruling of the circuit court in this particular, and if this were all, the judgment, perhaps, might be affirmed in accordance with the rule acted on in *Danville Bank* v. *Waddill*, 27 Gratt. 448; *Snouffer's Adm'r* v. *Hansbrough*, 79 Va. 166, and in other similar cases.

But this is not all. Another objection is made to the judgment which is insuperable. The plaintiff moved for a new trial, on the ground that the verdict was contrary to the evidence, and this motion was overruled. It ought to have been granted. The declaration alleges that the defendant unlawfully withholds possession of the whole of the limestone track of land, but the evidence, as well as his own admission, shows that he asserts no other right or interest in the land, or to the possession thereof, than the right to quarry and remove limestone therefrom, as granted by the supplemental agreement of the twenty-third of February, 1880. It also shows that, except as to this right, the verdict ought to have been for the plaintiff, since the

statute provides that in an action of ejectment the plaintiff may recover any part or share of the premises, though it be less than what is claimed in the declaration. Code, ch. 131, § 18. Yet 'the verdict, in effect, finds that the plaintiff has no title to and is not entitled to the possession of any part of the premises claimed in the declaration, and hence the judgment entered on the verdict, if permitted to stand, would hereafter conclude the plaintiff and his privies as to the title and right of possession to the whole tract; for the statute, in express terms, enacts that "any such judgment in an action of ejectment  *  *  shall be conclusive as to the title or right of possession established in such action upon the party against whom it is rendered, and against all persons claiming from, through or under such party," saving to infants and certain other persons under disabilities at the time of the judgment five years within which to sue after such disabilities have been removed. Code, ch. 131, §§ 35, 36.

The judgment will, therefore, be reversed, and the case remanded for a new trial.

FAUNTLEROY, J., concurred in reversing the judgment, but was further of opinion that the plaintiff was not estopped by the supplemental agreement of twenty-third of February, 1880, from setting up his after-acquired title.

JUDGMENT REVERSED.